**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| GEORDAN M. GOEBEL, as the heir and representative of the estate of DEBORAH LYNN GOEBEL,<br><br>    Plaintiff<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security<br>Administration,<br><br>    Defendant | Case No.: 3:25-cv-00507-CSD<br><br>**Order**<br><br>Re: ECF No. 12 |

Before the court is an Amended Motion for Reversal and/or Remand filed by Plaintiff Geordan M. Goebel, as heir and representative of the estate of Deborah Lynn Goebel (Ms. Goebel). (ECF No. 12.)[1] The Commissioner filed a response. (ECF No. 14.) Plaintiff filed a reply. (ECF No. 15.)

After a thorough review, Plaintiff's motion is granted, and this matter is remanded for further administrative proceedings consistent with the findings in this Order.

**I. BACKGROUND**

In June 2022, Ms. Goebel completed an application for disability insurance benefits (DIB) under Title II of the Social Security Act, alleging disability beginning on February 25, 2019. (Administrative Record (AR) 230-31.) The application was denied initially and on reconsideration. (AR 123-124, 129-130.)

---

[1] In light of the filing of the amended motion for remand, the originally filed motion for remand (ECF No. 11) will be denied as moot.

Ms. Goebel requested a hearing before an administrative law judge (ALJ). (AR 139.) ALJ Melinda Yurich held a hearing on September 19, 2024. (AR 54-94.) Ms. Goebel, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken from a vocational expert (VE).

On October 22, 2024, the ALJ issued a decision finding Ms. Goebel not disabled from the alleged onset date through the date last insured of December 31, 2022. (AR 21-47.) Ms. Goebel requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-3.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ failed to resolve the conflict between the Dictionary of Occupational Titles (DOT) and the testimony of the VE with respect to Ms. Goebel's reaching limitations; and (2) the ALJ failed to properly evaluate the opinion evidence predicated on Chronic Fatigue Syndrome (CFS).

## II. JUDICIAL REVIEW & SUBSTANTIAL EVIDENCE

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Soc. Sec. Admin*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may

not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one of the sequential evaluation process used to evaluate Social Security claims, the ALJ found Ms. Goebel met the insured status requirements through December 31, 2022, and she had not engaged in substantial gainful activity from the alleged onset date of February 25, 2019, and December 31, 2022. (AR 27.)

At step two, the ALJ concluded Ms. Goebel had the following severe impairments through her date last insured: degenerative disc disease, degenerative joint disease of the right knee and right shoulder, obstructive sleep apnea, hypertension, chronic fatigue syndrome (CFS), and hypothyroidism.  (AR 27.)

At step three, the ALJ determined Ms. Goebel's severe impairments did not meet or medically equal the Listed Impairments. (AR 32.)

At step four, the ALJ assessed Ms. Goebel as having the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except she could stand and walk up to two hours a day; sit up to six hours a day; could not climb ladders, ropes or scaffolds; could occasionally climb ramps, stairs, balance, stoop, kneel, crouch and crawl; could reach overhead occasionally with the bilateral upper extremities; could reach in front and laterally occasionally with the right upper extremity; and must avoid concentrated exposure to extreme hot and cold, humidity, vibration, and hazards such as unprotected heights and dangerous moving machinery. (AR 33.)

The ALJ then concluded Ms. Goebel was able to perform her past relevant work as an office manager as generally performed in the national economy. (AR 44-45.) Alternatively, the ALJ found there were other jobs that existed in significant numbers in the national economy that Ms. Goebel could perform, considering her age, education, work experience, transferable skills and RFC, including receptionist (DOT 237.367-038) and order clerk (DOT 249.362-026). (AR 45-46.)

As a result, the ALJ found Ms. Goebel not disabled from the alleged onset date of February 25, 2019, through the date last insured of December 31, 2022. (AR 46.)

**B. The ALJ Failed to Resolve a Conflict between the DOT and the VE's Testimony with Respect to Ms. Goebel's Reaching Limitations**

An ALJ may rely on a VE to "provide testimony about jobs the applicant can perform despite his or her limitations." *Gutierrez v. Colvin,* 844 F.3d 804, 807-08 (9th Cir. 2016) (citation omitted). The DOT is "a resource compiled by the Department of Labor that details the specific

requirements for different occupations," which "guides th[is] analysis." *Id*. at 808. If the VE's "opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the [VE] to decide if the claimant is disabled." *Id*. (citation omitted); *see also Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017).

As noted above, the ALJ limited the claimant to *occasionally* reaching overhead with the bilateral extremities, and to *occasionally* reaching in front and laterally with the right upper extremity.

Considering those limitations, the VE testified the claimant could perform her past relevant work as an office manager as that job is generally performed, as well as the occupations of receptionist and order clerk. (AR 86-88.)

According to the DOT, all of these jobs all require *frequent* reaching. (DOT 169.167-034 (office manager); DOT 237.367-038 (receptionist); DOT 249.362-026 (order clerk)).

The ALJ asked the VE if her testimony was consistent with the DOT, and she said, yes, in addition to her professional experience and training and knowledge with respect to directional or unilateral reaching at different planes, which is not specifically addressed by the DOT. (AR 89-90.)

In the ALJ's decision finding the claimant not disabled, the ALJ stated that the VE's testimony was consistent with information in the DOT, but where the VE's testimony addresses factors not discussed by the DOT, such as limitations reaching in specific directions, including reaching overhead, in front and laterally, or with one upper extremity, the VE testimony was based on the VE's experience and knowledge in the vocational rehabilitation field. (AR 46.)

5

In *Gutierrez v. Colvin*, 844 F.3d 804 (9th Cir. 2016), the claimant could not lift more than five pounds with her right arm and could not reach overhead with that arm. The VE testified she could perform the occupation of cashier, which was described in the DOT as requiring frequent reaching. The Ninth Circuit found there was no apparent or obvious conflict between the VE's testimony that the claimant could perform the cashier job and her restrictions with respect to her right arm because "not every job that involves reaching requires the ability to reach overhead," and it was unlikely and unforeseeable that a cashier would have to reach overhead. *Id.* at 808.

In *Lamera v. Berryhill,* 865 F.3d 1201 (9th Cir. 2017), by contrast, the Ninth Circuit concluded there was an obvious or apparent conflict between the limitation to occasional handling, fingering, and overhead reaching with the left arm, and the VE testimony that the claimant could perform jobs of officer helper, mail clerk and parking lot cashier, which according to the DOT, required frequent handling, fingering and reaching. There, the DOT description for the jobs indicated it was likely the person would need to use both hands for routine tasks involved in the job. *Id.* at 1205. The court found the ALJ erred in not having the VE resolve this conflict where the VE did not explain how the claimant could perform those jobs given the applicable restrictions.

Turning to this case, the DOT description of the officer manager occupation indicates that the occupation involves, among other things, typing, filing, and using a computer, which undoubtedly involve front reaching. DOT 169.167-034, 1991 WL 647430. The receptionist job indicates that the job may involve operation of a telephone console, typing, and performance of clerical duties, and so likely also involves front reaching. DOT 237.367-038, 1991 WL 672192. The order clerk job involves using a computer or calculating machine, writing, and typing or entering data into a computer, and filing. This job also likely involves front reaching. In other

words, it is "likely and foreseeable" that an office manager, receptionist, and order clerk would need to engage in front reaching, and this would likely be bilateral front reaching. *See also Lamear*, 865 F.3d at 1205 (DOT descriptions for officer helper, mail clerk, and parking lot cashier jobs suggest it is likely and foreseeable using both hands would be necessary to perform the tasks involved).

Therefore, there was an apparent conflict between the VE's opinion that the claimant could perform these jobs that require frequent reaching and the claimant's limitation to occasional reaching with the right upper extremity.

"[A]n ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC." *Lamear*, 865 F.3d at 1205. Here, the ALJ asked the VE if the testimony was consistent with the DOT, and the VE said yes, except that the testimony regarding reaching at different planes was based on the VE's professional experience, training, and knowledge. (AR 89-90.) However, the VE did not specifically ask the VE, and the VE provided no testimony regarding *how* the claimant could perform these three jobs that require frequent front or lateral reaching when the claimant was limited to occasional front and lateral reaching with the right upper extremity. Simply providing a generic statement that the VE's opinion is based on professional experience and training is not sufficient explanation to reconcile the conflict between the limitations in the RFC and the description of the occupations' requirements in the DOT.

As such, the claimant's motion is granted insofar as this matter will be remanded for the ALJ to follow-up with the VE to obtain an explanation reconciling the conflict between the claimant's restrictions in reaching and the DOT description for the occupations identified by the VE.

**C. The ALJ Did Not Properly Evaluate the Medical Opinion Evidence**

Under the current Social Security regulations, the ALJ does not "give any specific evidentiary weight … to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a), (b).

The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include: supportability, consistency, relationship with the claimant (length of treatment, frequency of examination, purpose of treatment, extent of treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

"'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency'." *Woods v. Kijakazi,* 32 F.4th 785, 791 (9th Cir. 2022)(citing 20 C.F.R. § 404.1520c(a)). )). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant … objective medical evidence.'" *Id*. at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent … with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (citing 20 C.F.R. § 404.1520c(c)(2)).

"[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate … how persuasive' it finds 'all of the medical opinions' from each doctor or

other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id*. § 404.1520c(b)(2))." *Id*.

In June 2023, the state agency medical consultant (who did not physically examine the claimant) opined Ms. Goebel could occasionally lift and/or carry 20 pounds, and could frequently lift and/or carry 10 pounds; could stand and/or walk for a total of 2 hours, and sit for a total of six hours in an eight-hour workday; she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes or scaffolds; she could handle, finger and feel with both arms/hands, but had limited reaching overhead and to the front and/or laterally on the right side; and she should avoid moderate exposure to extreme hot or cold, humidity, vibration and hazards.

The medical consultant noted Ms. Goebel alleged CFS, but the consultant did not include CFS as a severe impairment. However, the consultant opined that Ms. Goebel's mild obstructive sleep apnea was the possible etiology of her fatigue. Based on these findings, it was determined the claimant could perform her past relevant work. (AR 106-110.)

Another state agency medical consultant affirmed the prior findings at the reconsideration level. CFS was again not included as a severe impairment. However, the consultant noted that Ms. Goebel's symptom of fatigue was validated with findings. (AR 114-118.)

Ms. Goebel was treated by Hector Bonilla, M.D., at Stanford's Myalgic Encephalomyelitis (ME) and Chronic Fatigue Syndrome Center. He authored a letter dated August 6, 2024, stating it was his opinion that Ms. Goebel met the clinical criteria for CFS/ME. Until her fatigue measurably improved, he recommended that she refrain from any exertion, both physical and cognitive, because it may cause an exacerbation of symptoms and set her back in her recovery. As such, she was to limit activities, including walking, lifting, bending, and similar

physical exertion, and cognitive tasks that require focus. He noted that patients with ME/CFS need frequent rest. (AR 1608.)

Another of Ms. Goebel's treating physicians, Sarah Marshall, M.D., completed a treating physician questionnaire on July 11, 2024. Dr. Marshall confirmed the CFS diagnosis, noting Ms. Goebel's prognosis was stable. Her symptoms included profound fatigue, concentration impairment, and memory loss. She had slow movements, was forgetful, would lose her train of thought, and had word finding difficulty. She opined Ms. Goebel could not tolerate even low stress jobs due to her fatigue and memory loss, which prevented her from doing physical or mental tasks effectively. Dr. Marshall further opined that Ms. Goebel's symptoms would frequently be severe enough to interfere with the attention and concentration needed to perform even simple work tasks. She concluded that Ms. Goebel would need to take unscheduled breaks every hour for a period of one to four hours. She needed a cane or other assistive device due to poor balance. She opined that Ms. Goebel could sit for eight hours a day and stand or walk for one hour, and could rarely lift less than ten pounds and never more than ten pounds. She found the claimant would be absent from work as a result of her impairment more than four days per month. (AR 1610-1612.)

The claimant also treated with Henri Slots, MD. On March 14, 2023, Dr. Slots confirmed Ms. Goebel's CFS diagnosis, and noted she was sleeping, on average, 12-14 hours a day, and was able to be productive only one to two hours in a day, and would need to lay down the rest of the day. He opined she could not have a normal job due to her severe fatigue. (AR 1265.)

The ALJ first discussed the opinions of the two state agency medical consultants, finding the opinions were consistent with each other and generally persuasive to the extent they are

10

generally consistent with the less-than-light RFC, which was also consistent with and supported by the medical evidence. (AR 41.)

The ALJ then found the opinions of Dr. Marshall were not persuasive because they were not consistent with nor supported by the medical evidence, such as largely normal findings on physical exam, including normal neurological exam, full motor strength and generally normal gait with no assistive device. The ALJ also found the opinions were inconsistent with the claimant's wide range of daily activities. Finally, the ALJ concluded the opinions were not supported by the medical evidence because the longitudinal treating record did not consistently document the clinical findings cited by Dr. Marshall such as memory loss or slow movements. (AR 42.)

With respect to Dr. Slots and Dr. Bonilla, the ALJ noted they did not describe specific functional limitations. (AR 44.) As for Dr. Bonilla, the ALJ noted the diagnosis of CFS/ME, but the ALJ found Dr. Bonilla's opinion was not supported by cited specific clinical findings. (AR 44.)

The ALJ found the opinions of Dr. Slots and Dr. Bonilla were not persuasive, because the extreme limitations were not consistent with or supported by the medical evidence received at the hearing level, including largely normal findings on clinical examination, normal neurological findings, full motor strength, and relatively intact independent activities of daily living. In addition, the ALJ concluded that Dr. Slots' opinion was based on Ms. Goebel's subjectively reported fatigue, but found it was not supported by specific medical findings. (AR 44.)

While the ALJ discussed the consistency and supportability factors, the court finds that the ALJ's findings as to the medical opinions are generally not supported by substantial evidence because of the apparent contradiction between the ALJ's finding that Ms. Goebel's diagnosis of

CFS was a severe impairment, and the ALJ's reliance on the state agency medical consultants' opinions that did not find CFS to be a severe mental impairment and said her fatigue was possibly a result of her mild obstructive sleep apnea.

The ALJ specifically found the state agency medical consultants' opinions were consistent with and supported by the medical evidence, but this is not accurate insofar as the medical evidence supports a diagnosis of CFS. In addition, the ALJ noted Dr. Bonilla's CFS/ME diagnosis, but found that opinion was not supported by specific clinical findings, which appears to be belied by Dr. Bonilla's treating records. Finally, the ALJ concluded Dr. Slot's opinion was based on subjectively reported fatigue, but said this was not supported by specific medical findings, even though the ALJ endorsed CFS as a severe impairment.

As such, the court remands this matter for the ALJ to consider the medical opinion evidence of claimant's treating doctors taking into account that Ms. Goebel was in fact diagnosed with CFS, which the ALJ found to be a severe mental impairment.

### IV. CONCLUSION

Plaintiff's amended motion for reversal and/or remand (ECF No. 12) is **GRANTED.**

The original motion for remand (ECF No. 11), which was succeeded by the amended motion for remand, is **DENIED AS MOOT**.

This matter is **REMANDED** for further administrative proceedings consistent with this Order.  The Clerk shall enter JUDGMENT accordingly.

**IT IS HEREBY ORDERED.**

Dated: June 22, 2026

Craig S. Denney
United States Magistrate Judge